Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 2 0 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| Jason Crews,<br><br>Plaintiff,<br><br>vs.<br><br>Bankers Life Advisory Services, Inc,<br>CNO Financial Group, Inc,<br>K.F. Agency, Inc.,<br>James Covington, and<br>Oscar Larranga<br><br>Defendants. | Case No.: **CV23-02658-PHX-SMB**<br><br>Complaint for Violations of:<br><br>1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br><br>2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br><br>DEMAND FOR JURY TRIAL |

///

COMPLAINT- 1

# COMPLAINT

## Preliminary Statement

1. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. The Defendants in this action Bankers Life Advisory Services, Inc, CNO Financial Group, Inc, and K.F. Agency, Inc orchestrated placing at least seven illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List.

3. Plaintiff never consented to receive such messages.

## Parties

4. Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

5. Defendant CNO Financial Group, Inc ("CNO"), incorporated in Deleware, doing business as, *inter allia*, CNO, and is in the business of "provide[ing] life and health insurance, annuities, financial services and workforce benefits solutions through its family of brands, including Bankers Life...", https://archive.ph/qD66r.

6. CNO is a "person" as the term is defined by 47 U.S.C. § 153(39).

7. Defendant Bankers Life Advisory Services, Inc ("Bankers"), incorporated in Arizona, doing business as Bankers Life, and is in the business of selling Medicare Supplements insurance, life insurance, long term care insurance, supplemental health insurance, and annuities on behalf of Defendant CNO Financial Group, Inc ("CNO"), https://archive.ph/IF5mA.

8. Bankers is a "person" as the term is defined by 47 U.S.C. § 153(39).

9. Defendant K.F. Agency, Inc. ("KF") incorporated in Arizona, doing business as K.F. Agency and U.S. Health Care, and "is a wholly owned subsidiary of CNO

Financial Group" and "provides insurance solutions to middle-income working Americans and retirees through its family of established insurance brands including Bankers…", https://archive.ph/zfaOs.

10. KF is a "person" as the term is defined by 47 U.S.C. § 153(39).

11. Upon information and belief Defendant Oscar Larranga ("Larranga") was at all times relevant an employee of Defendant KF, and responsible for at least one of the alleged telephone calls complained herein.

12. Upon information and belief Laranga is a resident of Pima County, Arizona.

13. Laranga is a "person" as the term is defined by 47 U.S.C. § 153(39).

14. Upon information and belief Defendant James Covington ("Covington") was at all times relevant an employee of Defendant Bankers, and responsible for at least one of the alleged telephone calls complained herein.

15. Upon information and belief Covington is a resident of Duval County, Florida.

16. Convingtonis a "person" as the term is defined by 47 U.S.C. § 153(39).

## Jurisdiction & Venue

17. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

18. The Court has specific personal jurisdiction over the Defendants because they have repeatedly placed calls to Arizona residents, including the Plaintiff. Defendants purposely placed calls to Arizona residents.

19. The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]": Telephone Consumer

COMPLAINT- 3

Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## Factual Allegations

9. To promote their services Defendants relied on prerecorded "robocalls."

10. To promote their services Defendants also relied on the use of ATDS systems.

11. Plaintiff had no prior business relationship with Defendants.

12. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

13. The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

14. The Cell Number has been on the Do-Not-Call registry since November 7, 2006.

15. Despite this registration, Defendants placed the calls summarized in the following table with an Automated Telephone Dialing Systems ("ATDS").

| Date | Time | Caller ID | Pre Recorded |
| --- | --- | --- | --- |
| 11/3/2022 | 10:55 AM | (602)755-1368 | |
| 12/7/2023 | 9:14 AM | (602)894-7135 | |
| 1/09/2023 | 2:45 PM | (254)324-4670 | |
| 1/12/2023 | 2:08 PM | (602)269-4029 | TRUE |
| 1/18/2023 | 3:49 PM | (480)337-2492 | TRUE |
| 1/20/2023 | 10:38 AM | (602)289-3869 | TRUE |
| 1/24/2023 | 10:28 AM | (623)267-2793 | |

16. The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

17. Plaintiff did not consent to receive prerecorded or automated messages to his Cell Number.

18. Plaintiff did not consent to receive telephone calls via ATDS.

19. The Cell Number is not associated with a business.

Calls to Plaintiff

20. On or about November 3, 2023, at 10:55 am, Plaintiff received a call presenting caller ID (602)755-1368.

COMPLAINT- 4

21. Plaintiff was greeted by an individual who identified themselves as Sam from U.S. Health Care.

22. Sam pitched "government subsidized health plans" and requested personal information from Plaintiff.

23. Because Plaintiff had received several other similar phone calls in the past and was unable to ascertain the identity of the callers he played along with the callers and provided the information he thought would lead the caller's providing their identity.

24. Kevin transferred Plaintiff to another individual who identified themselves as David.

25. David verified the information that Plaintiff had already provided Sam, and in turn transferred Plaintiff to an individual who identified themselves as Oscar.

26. Oscar said he was offering "Medicare Advantage plans where you get a lot of benefits and it doesn't cost you anything extra."

27. Oscar tried to convince Plaintiff to enroll in one of his health care plans.

28. Oscar stated that "[he] represent[s] K.F. Agency who represents UnitedHealthcare, Aetna, Cigna, things like that."

29. When asked for his company's website, Oscar misrepresented himself to Plaintiff, saying "just go to unitedhealthcare.com".

30. When pressed for more information to identify the company he represented, and seeking to conceal his identity and that of his employer, Oscar disconnected the call.

31. Upon information and belief, Oscar is defendant Larranga.

32. Upon information and belief Larranga is and was at all times relevant an employee or representative working on behalf of KF.

33. On November 4, 2022, Plaintiff sent an email to Privacy@cnoinc.com and Gary.Bhojwani@cnoinc.com, providing details of the calls, requesting any evidence in their possession that Plaintiff allegedly consented to receive telemarketing and/or pre-recorded calls from Defendants, requesting a copy of their internal do-not-call policies, and to be placed on their internal do not call list.

34. Plaintiff never received a copy of Defendant's internal do-no-call policies.

35. Plaintiff believes and therefor avers this is because no such policy exists.

36. On or about January 18, 2023, at 10:55 am, Plaintiff received a call presenting caller ID (480)337-2492.

37. Plaintiff was greeted by an automated and prerecorded message.

38. The voice on the recording identified itself as "Frank" calling on behalf of National Healthcare Benefits Exchange".

39. The recording claimed to have exclusive access to government programs that could benefit Plaintiff.

40. Because Plaintiff believed he had received several other similar phone calls in the past and was unable to ascertain the identity of the callers he played along with the callers and provided the information he thought would lead the caller's providing their identity.

41. Plaintiff was eventually transferred to an individual who identified themselves as James Covington with license number 18985821.

42. Upon information and belief James Covington is defendant Covington.

43. Covington claimed to be working for "healthcare.gov" and "Health Enrolment Center".

44. Sam pitched "government subsidized health plans" and requested personal information from Plaintiff and tried to convince Plaintiff to enroll in one of his plans.

45. When Plaintiff tried to get more definite information about the identity of the caller, Covington disconnected the call.

46. Upon information and belief Covington is and was at all times relevant an employee or representative working on behalf of Bankers.

47. Upon review of Plaintiff's call records he also received at least two additional calls (three in total) with the same automated and pre-recorded voice as "Frank" on January 12 and 20, 2023.

48. Based on the above-described calls, Plaintiff believes and therefor avers that all pre-recorded calls containing a recording identifying as "Frank" were placed by or on behalf of Bankers.

49. Upon review of Plaintiff's call records he also received at least three additional calls with callers identifying themselves as "U.S. Health Care".

50. Based on the above-described calls, Plaintiff believes and therefor avers that all calls with callers claiming to represent "U.S. Health Care" were placed by or on behalf of KF.

51. Despite being on the Federal Do-Not-Call-List, and Plaintiff's direct written request on November 4, 2023, written request not to be called Defendant's continued to call Plaintiff.

52. Defendants did not send Plaintiff a copy of their DNC Policy.

53. Plaintiff avers and therefor believes Defendants failed to produce their DNC Policy after multiple requests because no such policy exists.

### Defendants' Use of an ATDS

54. Defendants called frequently and from various numbers.

55. Defendants' representatives used the identical or nearly identical scripts.

56. Defendants' representatives purposefully attempted to conceal the identity of their company.

57. When calling back the numbers presented by the caller ID's Plaintiff received the same identical prerecorded message.

58. For these reasons, Plaintiff believes the telemarketers used an ATDS to generate leads for Defendant's debt relief services.

59. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

60. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful": Id. at 879 (cleaned up).

61. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns": Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database: *Id.*

62. The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

63. Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

64. Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

COMPLAINT- 8

65. No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an ATDS. Such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at 881–882.

66. Plaintiff is ignorant of the exact process by which the system(s) used by Defendants operates other than by drawing the reasonable inference and alleging that the system(s) stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

### **Defendants' Conduct Was Knowing and Willing**

67. Defendants intentionally called Plaintiff multiple times in order to advertise their services to Plaintiff

68. Defendants knew his actions were in violation of the TCPA and willfully continued his conduct.

### **The TCPA Prohibits All Automated Calls to Protected Numbers**

69. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

COMPLAINT- 9

70. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

71. According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

72. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

73. These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

74. "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

75. U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person...": U.S.C. § 227(f)(15).

76. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

77. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

78. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

79. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may ... [e]xcept as provided ... initiate any telephone call ... using an automatic telephone dialing system or an artificial or prerecorded voice."

80. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing,

using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described... "

81. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

82. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

83. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

84. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand..."
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes ... receives a request ... not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name ... and telephone number on the do-not-call list at the time the request is made ... must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

(4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

(5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

85. Plaintiff incorporates the foregoing allegations as fully set forth herein.

86. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending at least four calls, except for emergency purposes, to Plaintiff's telephone which is assigned to a cellular telephone service using an ATDS.

87. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

88. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

89. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

90. Defendants' violations were willful and/or knowing.

### Count Two

91. Plaintiff incorporates the foregoing allegations as fully set forth herein.

COMPLAINT- 13

92. Defendants called Plaintiff's private residential telephone number which was registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2) at least seven times.

93. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

94. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(c)(3)(F).

95. Defendants' violations were willful and/or knowing.

## County Three

96. Plaintiff incorporates the foregoing allegations as fully set forth herein.

97. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by sending at least three telephone calls pre-recorded and/or automated voices, without prior express consent except for emergency purposes, to Plaintiff's telephone at least three times.

98. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

99. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls with an automated or prerecorded voice without prior express consent.

100. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

COMPLAINT- 14

101. Defendants' violations were willful and/or knowing.

## Count Four

102. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

103. 47 C.F.R. 64.1200(d)(1) requires that Defendants maintain a written telemarketing policy, available upon demand, for maintaining a do-not-call list.

104. Defendants failed to fulfill this requirement, resulting in violations against Plaintiff.

105. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

106. If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

107. Plaintiff also seeks an injunction prohibiting all telemarketing calls from Defendants until such time Defendants have trained all employees and their agents on the existence and usage of Defendants' internal do-no-call policy, and established processes and controls to insure all future employees are trained on the existence and usage of said policy, and processes and controls are established ensuring employees are able to make said policy available upon demand.

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or

knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

C. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this December 17, 2023.

_____
Jason Crews

COMPLAINT- 16